UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA JOHNSON,

   Plaintiff,          Case No. 1:16-cv-860

v.

                 HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
              /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-six years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.78, 154, 166.) She previously obtained an Associate's Degree, and has worked as a registered nurse, as a nurse supervisor, and as a community nurse. (PageID.105, 143–144.) Plaintiff applied for benefits on January 28, 2015, alleging disability beginning January 9, 2014, due to bipolar disorder, depression, borderline personality disorder, interstitial cystitis, anxiety, and suicide attempts. (PageID.154–166, 238–250.) Plaintiff's applications were denied

2

on April 8, 2015, after which time she requested a hearing before an ALJ. (PageID.181–188, 192–193.) On September 29, 2015, Plaintiff appeared with her counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.100–149.) In a written decision dated October 16, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.78–98.) On May 4, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.40–45.) This decision was upheld on July 29, 2016, after Plaintiff requested her case be reopened. (PageID.36–37.)

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity (SGA) during the period between her alleged onset date through January 21, 2015. Specifically, Plaintiff earned well over SGA threshold amounts in each quarter of 2014 and the first quarter of 2015. (PageID.83.) The ALJ further determined that since January 21, 2015, Plaintiff had not engaged in substantial gainful activity. (PageID.84.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) obesity; (2) interstitial cystitis/pelvic dysfunction/stress incontinence; (3) a bipolar disorder; and (4) a personality disorder. (PageID.84.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.84–86.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can understand, remember, and perform simple tasks, make simple decisions, and adapt to routine changes in the workplace. She can have occasional interaction with the public, coworkers, and supervisors.

4

(PageID.86.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (PageID.91–92.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a machine tender (101,000 positions), line attendant (125,000 positions), and as a packager (122,000 positions). (PageID.144–145.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.93.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from January 9, 2014, the alleged disability onset date, through October 16, 2015, the date of decision. (PageID.93–94.)

## DISCUSSION

### 1. The ALJ's Credibility Determination.

At the administrative hearing, Plaintiff testified she was impaired to an extent far greater than as recognized by the ALJ. She stated she had been let go from previous employment because of attendance problems and an inability to get along well with others. (PageID.116.) Plaintiff testified that her last termination "broke" her. Her anxiety had increased, and she found it became more difficult to leave her house. Even before her last employment ended, she stated she would miss work because she mentally could not handle it. She would stay in bed for days before going back to work. (PageID.116.) She felt that she was paranoid, and everyone was out to get her. (PageID.118.) She could barely stand going to a store for grocery shopping. (PageID.121.) She felt that she could not even perform a job with limited interaction with co-workers and supervisors because she would still have to interact with other people. (PageID.135.) She also testified that after

5

her son's suicide, her anxiety increased and she started to become confused. She would believe she had said or read things that did not occur. (PageID.132.) She testified that other than getting up to get a drink, use the bathroom, or feed the dog, she would lie in her bed all day. (PageID.136.) She further stated she had trouble controlling her emotions. She would cry every day, and could not stop. (PageID.132–133.) The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible:

> In assessing the claimant's credibility, I first note that the claimant received unemployment benefits in the first and second quarters of 2015 (Ex. 4D and updated Certified Earnings query). To be eligible for unemployment benefits, the claimant needed to represent that she was ready, willing, and able to work. This representation is inconsistent with the claimant's allegations of disabling symptoms.
>
> Despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a vacation since the alleged onset date. Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated. As previously noted above, the claimant went on a trip to Mackinac Island with her boyfriend in August of 2015 (Ex. 10F/24). There was also reference to a trip to North Carolina in September of 2014 (Ex. 2F/19). And the claimant reported taking her grandmother to a family reunion (Testimony at (953:30).
>
> Finally, although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weight somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant testified that the combination of Ditropan and instillations were helpful in treating her symptoms of interstitial cystitis (Ex. 1F/15, and testimony at (9:57:08). She reported that Ativan was helpful in treating her mental symptoms when she was starting to get out of control or angry (Ex. 7F/7). And she reported in January of 2014 that Lithium and Wellbutrin were working well for her (Ex. 2F/53).

> Taken as a whole, these factors tend to undermine the claimant's allegations of disabling symptoms.

(PageID.90.) Plaintiff claims the ALJ's decision in this regard is unsupported by substantial evidence. The Court disagrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and

discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The majority of Plaintiff's argument here focuses on the ALJ's discussion of Plaintiff's receipt of unemployment benefits. Plaintiff had acknowledged at the administrative hearing that she received unemployment compensation through June 23, 2015. (PageID.106.) This district, as well as the Sixth Circuit, has recognized the apparent contradiction between a claimant seeking disability benefits while simultaneously receiving unemployment compensation. *See, e.g., Workman*, 105 F. App'x 794, 801–02 (6th Cir. 2000); *see also Loyacano v. Comm'r of Soc. Sec.*, No. 1: 13–cv–144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr. 25, 2014) (collecting cases); *Smith v. Comm'r of Soc. Sec.*, No. 1:12–cv–904, 2014 WL 197846, at * 16 (S.D. Ohio Jan. 15, 2014); *Barton v. Astrue*, No. 3:11–cv–1239, 2013 WL 6196297, at * 7 (M.D. Tenn. Nov. 27, 2013).

Plaintiff argues, however, that this line of cases no longer applies due to subsequent developments in agency policy. Specifically, Plaintiff points to an August 2010, memorandum from Frank A. Cristaudo, the Chief Administrative Law Judge for the Social Security Administration. That memo instructs ALJs that "the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled." *Webster v. Colvin*, 2014 WL 4095341, at *9 (E.D. Tenn. Aug. 19, 2014). As Chief ALJ Cristaudo explained, "because the disability decisionmaking process is uncertain and quite lengthy, a claimant should not be forced to choose between applying for unemployment and disability benefits." *Id.* Plaintiff argues that this memo precludes consideration of a claimant's receipt of unemployment benefits. Here, the ALJ did not base the credibility determination solely on the receipt of unemployment benefits, but noted that other factors, including Plaintiff's daily activities and medical history, combined with the receipt of unemployment benefits stood at odds with her disability claim. This was entirely appropriate. Plaintiff's interpretation of the memo overreads the Administration's policy. As the memo itself states, the receipt of unemployment benefits is a factor that may be considered. As such, the deference generally accorded an ALJ's credibility determination is appropriate here.

Plaintiff makes brief arguments concerning the remaining reasons offered by the ALJ. She argues that her vacations cannot constitute substantial evidence discounting her credibility, and further argues that the periodic stability that the ALJ cites is not evidence of no disability. Again, the Court disagrees. Social Security regulations explicitly allow an ALJ to consider a claimant's daily activities and the effectiveness of a claimant's medications in evaluating the claimant's complaints. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, Plaintiff's ability to engage in

9

these vacations undercut her testimony regarding her isolating tendencies and inability to be around others. Plaintiff testified that she had difficulty leaving the house even to go shopping, but she testified she was able to take her grandmother to a yearly reunion where she stayed for three hours with a hundred other individuals, composed not only of family members, but also of acquaintances. (PageID.127–128.) This is more than substantial evidence to undercut the severity of Plaintiff's allegations regarding her isolation. So too, Plaintiff testified at several occasions that her medication helped control her symptoms. (PageID.120–121, 123, 125–126.) Plaintiff argues that "periodic disability is not equivalent to no disability." (PageID.612.) But that is not what the ALJ found. Indeed, substantial evidence supports the ALJ's finding here. In addition to Plaintiff's own testimony, Plaintiff reported to her medical care providers on several occasions that instillations and medications were helping control her interstitial cystitis. (PageID.366, 369, 372.) Furthermore, on February 14, 2014, Plaintiff said she felt better after taking lithium for her mood disorder. (PageID.381.) She felt more motivated. She was cleaning, cooking and felt better and more creative. (PageID.381.) On January 23, 2015, she reported the "wellbutrin and lithium" were working well. She stated "I am only half falling apart and not completely." (PageID.429.) On May 21, 2015, she reported that she was taking Ativan three times a week. She found that it helped control her mood disorder, and she took it when she felt she was getting out of control, angry, or felt like she was "screaming inside." (PageID.485.) Plaintiff has done nothing, other than point to her own testimony, to demonstrate that the ALJ's observation that "treatment has been generally successful in controlling" her symptoms is unsupported by substantial evidence. To be sure, the Court does not doubt that Plaintiff is limited due to her mental impairments, however such

limitations are adequately accounted for in the ALJ's RFC determination. This claim of error should be denied.

## 2. The ALJ's Evaluation of the Agency Physician's Opinion.

In a brief claim of error, Plaintiff contends that it was in error for the ALJ to give "great weight" to the opinion of Dr. Ron Marshall, PhD., an agency medical reviewer. (PageID.613.) Plaintiff notes that Dr. Marshall did not review all the medical evidence in the record and further cites authority for the proposition that "[a]n ALJ generally should assign less weight to an opinion of a source who has not examined the claimant." (PageID.613.)

Because there was not treating physician opinion to assign controlling weight, the ALJ reviewed the other medical opinions pursuant to 20 C.F.R. §§ 404.1527(c)(2) 416.928(c)(2), which provides that "[u]nless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." Contrary to Plaintiff's assertion, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). That said, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013)

(internal citations and quotation marks omitted). The ALJ gave sufficient indication here, explicitly noting in his discussion that the opinion was consistent with the record as a whole. Dr. Marshall provided his opinion on April 8, 2015. It is patent the ALJ considered the latter dated evidence. (PageID.88.) Accordingly, the ALJ correctly relied on the opinion of Dr. Marshall.

3. **GAF Scores.**

The ALJ closed his discussion of the record evidence by noting that Plaintiff had been assigned several GAF scores, ranging from 50 to 55. (PageID.91.) The ALJ remarked that GAF scores have limited evidentiary value, and stated he gave them no weight. Instead, the ALJ noted he was giving more weight to the objective details in the record. (PageID.91.) Plaintiff claims the ALJ failed to give "good reasons" for rejecting a treating doctor's opinion. Furthermore, given the consistency of the scores, Plaintiff claims the ALJ erred in minimizing the severity of Plaintiff's symptoms. The Court disagrees.

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (noting that "no particular amount of weight is required to be placed on a GAF score.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)); *Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv–1308, 2013 WL 1305291, at *9 (W.D. Mich. Mar. 28, 2013) ("The ALJ is not required 'to put stock in a GAF score in the first place.'") (quoting *Kornecky*, 167 F. App'x at 503 n.7); *Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp. 2d 692, 696 n. 3 (W.D. Mich. 2009) (collecting cases). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."

12

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. "The mere fact that there is consistency across several GAF scores is not evidence that the ALJ erred in discounting them." *Sarp v. Comm'r of Soc. Sec.*, No. 16-CV-10099, 2017 WL 1365414, at *6 (E.D. Mich. Apr. 14, 2017). The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Comm'r of Soc. Sec.*, No. 1:07–cv–1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Soc. Sec. Admin.*, 211 F. App'x. 411, 415 (6th Cir. 2006); *see Richardson v. Comm'r of Soc. Sec.*, No. 1:12–cv–776, 2013 WL 5211245, at *5 (W.D. Mich. Sept.16, 2013).

Even if the ALJ could consider GAF scores as competent evidence, a review of the record further supports the decision to afford little weight to Plaintiff's GAF score. A review of the records from the North Shore clinic reveals that they suffer from significant internal inconsistencies. GAF scores of 41 to 50, and 51 to 60 suggest "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to hold a job)" and "moderate symptoms (e.g., flat affect

13

and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM–IV at 34. However, the remaining portions of the records containing these GAF scores are instead completely consistent with the ALJ's RFC determination. For example, elsewhere in the February 1, 2015, examination–where Plaintiff was assigned a GAF score of 55–a mental status exam found Plaintiff to be alert, cooperative, calm, and fully oriented. She had a normal rate, volume, prosody, articulation, spontaneity and pressure of speech, a logical thought process, appropriate insight, judgment, attention, and concentration, although the latter was not formally tested. (PageID.451-452.)

Similar results were found during the other five visits. For example, on July 20, 2015, Plaintiff had fair grooming and hygiene, was alert, oriented x4, friendly, cooperative, and engaged. (PageID.507.) On August 20, 2015, she was appropriately dressed and well groomed. She was alert, friendly, cooperative, and engaged. (PageID.521.) She maintained good eye contact, was full oriented, and had a logical/linear thought process. (PageID.523.) "[T]he determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). The ALJ recognized the limited significance of the GAF scores assigned, and instead properly found the objective record evidence supported the RFC. This claim of error will be denied.

4.  **The ALJ's Step 5 Determination.**

At step five in the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Jones*, 336 F.3d at 474. An ALJ's finding that a claimant possesses the capacity to perform substantial gainful activity that exists in significant numbers in the national economy must be supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Accordingly, in order to satisfy the burden, the ALJ consulted a VE at the hearing. As noted above, the ALJ provided three jobs with a total of 348,000 national positions. In her final claim of error, Plaintiff contends that the numbers provided by the VE cannot constitute substantial evidence in support of the Commissioner's step five determination.

In this case, the ALJ chose to use the services of a VE to determine whether Plaintiff could perform other work in the national economy. In reaching this determination, the VE relied on her personal experience and other sources such as the DOT as well as the Bureau of Labor Statistics. (PageID.147.) At the hearing, Plaintiff's counsel elicited testimony from the VE that she obtained the numbers from the Bureau of Labor Statistics' Standard Occupational Classification (SOC). (PageID.147.) Plaintiff's counsel confirmed that each SOC can contain multiple DOT numbers. Plaintiff's counsel then asked whether all the DOTs within a SOC category would be for light work. The VE responded, however, that they are separated out. (PageID.148.) Seizing on this response, Plaintiff now argues that the numbers cannot constitute a significant number of jobs

because, as the VE admitted, the numbers were based on a classification that very well may account for jobs requiring capabilities greater than accounted for in her RFC. She claims the ALJ committed the same error that was present in *Boston v. Colvin*, No. 4:14-CV-206-D, 2016 WL 721563, at *12 (E.D.N.C. Feb. 2, 2016), *report and recommendation adopted*, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016). The Court disagrees. There is nothing from the transcript of the hearing that demonstrates the VE merely provided numbers from a larger category as reflecting numbers for the DOT. To the contrary, while the SOC may have been the VE's starting point, the VE testified that the numbers she provided were also based on her own experience. Furthermore, Plaintiff has not demonstrated that it was unreasonable for the ALJ to rely on the VE's testimony. Rather she only speculates that there might be DOT numbers within the SOC that perhaps are inconsistent with her RFC. "Whether remand is appropriate in this instance boils down to whether substantial evidence supports the ALJ's conclusion that given [the claimant's] age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that [ ]he can perform." *Earls v. Comm'r of Soc. Sec.*, No. 1:09 CV 01465, 2011 U.S. Dist. LEXIS 92882, at *19, 2011 WL 3652435 (N.D. Ohio, Aug. 19, 2011). The fact that there might be a DOT description within the SOC that Plaintiff cannot perform does not make it unreasonable for the ALJ to rely on the VE's testimony.

Moreover, while Plaintiff's counsel examined the VE, he did not ultimately object to the VE's testimony at the hearing or through a post hearing brief, and thus failed to preserve this issue for appeal. "This Court will not review the ALJ's decision with respect to issues not properly raised at the administrative level." *Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001). "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's

16

failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078 at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997)) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal); *cf. Helton v. Comm'r of Soc. Sec.*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000) (claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for purposes of judicial review).

For all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated: May 2, 2017 /s/ Janet T. Neff  
JANET T. NEFF  
UNITED STATES DISTRICT JUDGE